# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE PETITION OF HONEY ISLAND ADVENTURE, L.L.C. | CIVIL ACTION |
| | NO. 16-6940<br>c/w 16-10728<br>c/w 17-2652<br>c/w 17-2896<br>SECTION: "G"(5) |

## ORDER

After the deadline in the Court's "Scheduling Order,"[1] Plaintiffs Leticia Keiger, Ricardo Perez ("Perez"), and Ignacio Perez (collectively, "Plaintiffs") filed a supplemental witness and exhibit list and a second supplemental witness and exhibit list. Pending before the Court are Defendants, Honey Island Adventures, L.L.C., XL Specialty Insurance Company, Earl Mofield, Tray Nobles, Neil Benson d/b/a Pearl River Eco Tours, and Travelers Property Casualty Company of America's (collectively, "Defendants") "Motion to Strike Supplemental Witness and Exhibit List"[2] and "Motion to Strike Second Supplemental Witness and Exhibit List."[3] Having considered the Defendants' motions, Plaintiffs' oppositions to the motions, the record, and the applicable law, the Court will grant the motions.

---

[1] Rec. doc. 48.

[2] Rec. Doc. 149.

[3] Rec. Doc. 154.

1

## I. Background

Honey Island Adventure, LLC filed a "Petition for Exoneration from, or Alternatively, Limitation of Liability" on May 24, 2016.[4] In its original scheduling order, this Court scheduled trial for July 27, 2017.[5] On April 20, 2017, all parties enrolled at that time filed a "Joint Motion to Continue."[6] On April 26, 2017, the Court granted the motion to continue and ordered a new trial date for January 2018.[7]

On June 15, 2017, the Court issued a new scheduling order, which set a deadline of November 9, 2017, for parties to "file in the record and serve upon their opponents a list of all witnesses who will be called to testify at trial and all exhibits which will be used at trial . . . ."[8]

On December 5, 2017, Plaintiffs filed a "Supplemental Witness and Exhibit List of Claimant/Plaintiffs."[9] On December 13, 2017, Defendants filed the instant "Motion to Strike Supplemental Witness and Exhibit List."[10] On December 14, 2017, Plaintiffs filed a response in opposition to Defendants' motion.[11] On December 14, 2017, Plaintiffs also filed "Second Supplemental Witness and Exhibit List."[12] On December 14, 2017, Defendants filed the instant

---

[4] Rec. Doc. 1.

[5] Rec. Doc. 27 at 4.

[6] Rec. Doc. 46.

[7] Rec. Doc. 48.

[8] *Id.*

[9] Rec. Doc. 144.

[10] Rec. Doc. 149.

[11] Rec. Doc. 151.

[12] Rec. Doc. 152.

"Motion to Strike Second Supplemental Witness and Exhibit List."[13] On December 15, 2017, Plaintiffs filed opposition to Defendants' motion to strike the second list.[14]

## II. Parties' Arguments

### A. *Defendants' Motion to Strike*

Defendants assert that Plaintiffs did not file the "Supplemental Witness and Exhibit List of Claimant/Plaintiffs" until December 5, 2017.[15] As a result, Defendants argue that this list "should be stricken from the record and Dr. Rafael Gurrerro should not be allowed to offer testimony regarding his treatment of Ricardo Perez, nor should Dr. Rafael Gurrerro's medical records including any records of testing performed or ordered by Dr. Rafael Gurrerro, be introduced as exhibits at trial."[16]

Defendants also assert that the inclusion of Plaintiffs' supplemental witness and exhibit list, as well as Dr. Gurrerro's testimony and reports, would prejudice Defendants at trial.[17] Defendants aver that Defendants' "IME physicians and other proposed experts are not able to evaluate and respond to any opinions . . . pertaining to Dr. Rafael Gurrerro's treatment of Ricardo Perez since his identity was never disclosed or discussed, nor were his medical records ever provided."[18]

Finally, Defendants state that Plaintiffs had an affirmative burden to provide this

---

[13] Rec. Doc. 154.

[14] Rec. Doc. 156.

[15] Rec. Doc. 149–1 at 3.

[16] *Id.*

[17] *Id.* at 4.

[18] *Id.*

3

information in accordance with the Federal Rules of Civil Procedure and the Court's "Scheduling Order."[19] Defendants assert that Plaintiffs failed to meet this burden, so the witness and exhibit list, along with Dr. Gurrerro's testimony should be excluded.[20]

Defendants' motion to strike the second supplemental witness and exhibit list includes the same arguments as above.[21]

### B. *Plaintiffs' Opposition to Defendants' Motion*

Plaintiffs assert that the list is a result of further treatment/evaluation of Plaintiff Ricardo Perez, as opposed to a "last second ambush."[22] Plaintiffs aver that they will file a motion to continue if the Court is amenable to continuing the case, despite repeated statements from the Court that the Court will not consider such action.[23]

Plaintiffs then assert that the original list of witnesses and exhibits was filed timely to the court with the "then known and anticipated witnesses and documents."[24] Plaintiffs assert that, unbeknownst to Plaintiffs' counsel, Perez sought further treatment on November 30, 2017.[25] Plaintiffs' counsel was not made aware of this appointment and the resulting Q EEG and SPECT Scan until December 5, 2017.[26] Plaintiffs assert that the supplemental witness and exhibit list was

---

[19] *Id.*

[20] *Id.*

[21] Rec. Doc. 154.

[22] Rec. Doc. 151 at 1.

[23] *Id.* at 2.

[24] *Id.*

[25] *Id.*

[26] *Id.*

4

filed immediately upon Plaintiffs' counsel's knowledge.[27] Plaintiffs' counsel then states that counsel did not hear from Perez until December 13, 2017, despite multiple attempts to reach him.[28] However, immediately upon reaching Perez, Plaintiffs' counsel obtained Dr. Gurrerro's records and served Defendants' counsel within hours of receiving them.[29]

Plaintiffs argue that no doctor had recommended neuro-psychologist treatment, EEG testing, or Spect scan testing before early November 2017, despite the fact that Perez was examined by many eye doctors, including two neuro-opthamalogists.[30] Plaintiffs' counsel discussed this recommended treatment with Perez, but "counsel understood that [Perez] did not want such an evaluation when this was discussed at the end of the first week of November." However, Plaintiffs assert that Perez's family has since intervened "after they detected worsening of his emotional and mental status over the last month or so."[31]

Finally, Plaintiffs acknowledge that there may not be sufficient time for Defendants to acquire an expert to rebut this testimony, but "plaintiff's counsel will cooperate fully to do so."[32] Plaintiffs then request that the Court continue the trial or sever only the damages portion of Perez's case, if the Court is inclined to grant the motion to strike.[33]

Plaintiffs state that they oppose Defendants' motion to strike the second supplemental witness and exhibit list "for the same reasons and on the same grounds as plaintiffs fully set forth

---

[27] *Id.* at 2–3.

[28] *Id.* at 3.

[29] *Id.*

[30] *Id.* at 4.

[31] *Id.*

[32] *Id.* at 5.

[33] *Id.*

5

in their opposition to Defendants Motion to Strike Supplemental Witness and Exhibit List."[34]

### III. Legal Standard

The Federal Rules of Civil Procedure "authorize[] federal courts to control and expedite the discovery process through a scheduling order."[35] Federal Rule of Civil Procedure 16 allows a court to exclude expert testimony or strike pleadings if a party fails to comply with deadlines imposed by a scheduling order.[36]

Federal Rule of Civil Procedure 16(b)(4) states, "A schedule may be modified only for good cause and with the judge's consent." The Fifth Circuit has stated that the four factors bearing on good cause are: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."[37] The Fifth Circuit has stated that these factors are "relevant to good cause," but has imposed no requirement that all factors weigh in favor of the party seeking leave to amend in order for the district court to allow an untimely amendment.[38] A district court has broad discretion in determining how to best preserve the integrity and purpose of its scheduling order.[39]

---

[34] Rec. Doc. 156.

[35] *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996); *see* Fed. R. Civ. P. 16

[36] Fed. R. Civ. P. 16(f)(1); *see* Fed. R. Civ. P. 37(b)(2)(A).

[37] *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003).

[38] *Fahim v. Marrior Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008).

[39] *Sw. Bell*, 346 F.3d at 546 (citing *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003)).

## IV. Analysis

Here, Plaintiffs have filed a First and Second Supplemental Witness and Exhibit List after the deadline set forth in the Court's Scheduling Order, without leave of Court and without providing good cause at the time of the filings for the delay. Now, after Defendants moved to strike the filings, Plaintiffs attempt to show good cause for their failure to comply with the deadlines set forth in the Court's Scheduling Order. The trial date has already been continued on one occasion and the current trial date is quickly approaching. The record is replete with admonishments to the parties from the Court about their dilatory tactics and lack of diligence in moving this case forward.

As noted above, the Court analyzes four factors in determining whether good cause exists to allow parties to file a witness and exhibit list after a deadline set forth in a scheduling order. As to the first factor, Plaintiffs have stated that the late filings result from the fact that the treatment at issue was not recommended until early November 2017. Here, Plaintiffs did not even seek leave of court to amend. Instead, Plaintiffs just filed the witness and exhibit lists into the record without the Court's permission, and Defendants had to file the instant motions to strike. Plaintiffs also acknowledge that Perez "did not want such an evaluation when this was discussed at the end of the first week of November." Therefore, Plaintiffs were also delayed by Perez's failure to act. Thus, the Court finds Plaintiffs' explanation unpersuasive.

As to the importance of the amendment, although this additional evidence and testimony could help Plaintiffs recover additional damages, Plaintiffs have not made clear how great these additional damages may be. Moreover, Plaintiffs have yet to explain why they failed to bring this issue to the Court's attention before the deadline to file the witness and exhibit list or even when they first became aware.

As to the potential prejudice to the Defendants, Defendants argue that allowing Plaintiffs'

supplemental witness and exhibit lists would greatly prejudice their case, since their experts would not have the time to evaluate or respond to Plaintiffs' proposed expert testimony and exhibits. Plaintiffs do not dispute this potential prejudice. Instead, Plaintiffs offer to cooperate with Defendants, and request the Court to grant another continuance.

Finally, as to the fourth factor, whether a continuance could cure the prejudice, the Court has already granted a continuance in this case. Despite the additional time provided, Plaintiffs have failed to timely prepare their case. Moreover, the Court has repeatedly stated that such a request for a continuance will not be granted.

Considering these factors, the Court does not find good cause to modify the scheduling order and allow Plaintiffs to introduce the recently identified witnesses and exhibits.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' "Motion to Strike Supplemental Witness and Exhibit List"[40] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' "Motion to Strike Supplemental Witness and Exhibit List"[41] is **GRANTED.**

**NEW ORLEANS, LOUISIANA**, this 21st day of December, 2017.

                                        **NANNETTE JOLIVETTE BROWN**
                                        **UNITED STATES DISTRICT JUDGE**

---

[40] Rec. Doc. 149.

[41] Rec. Doc. 154.