UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE PETITION OF HONEY ISLAND ADVENTURE, L.L.C. | CIVIL ACTION<br><br>NO. 16-6940, c/w 16-10728, c/w 17-2652, c/w 17-2896<br><br>SECTION: "G"(5) |

## ORDER AND REASONS

Pending before the Court is Defendants' Honey Island Adventures, L.L.C., XL Specialty Insurance Company, Earl Mofield, Tray Nobles, Neil Benson d/b/a Pearl River Eco Tours, and Travelers Property Casualty Company of America's (collectively, "Defendants") "Motion to Enforce Settlement Agreement with Ricardo Perez."[1] This matter came before the Court for an evidentiary hearing on January 16, 2019. The Court has carefully considered the testimony of all the witnesses and the exhibits entered into evidence during the evidentiary hearing, as well as the record. After reviewing all of the evidence and pursuant to Federal Rule of Civil Procedure Rule 52(a), the Court issues the following findings of fact and conclusions of law.[2]

## I. Background

This case arises out of an allision between two swamp tour vessels, the M/V SASQUATCH (owned and operated by Neil Benson d/b/a Pearl River Eco Tours) and the M/V GATOR BAIT IV (owned and operated by Honey Island Adventures, LLC), on March 6, 2016. Honey Island Adventure, LLC filed a "Petition for Exoneration from, or Alternatively, Limitation of Liability"

---

[1] Rec. Doc. 161.

[2] *See also Pearson v. Ecological Science Corp.*, 522 F.2d 171, 176 (5th Cir. 1975). To the extent that any finding of fact may be construed as a conclusion of law, the Court hereby adopts it as such, and to the extent that any conclusion of law constitutes a finding of fact, the Court hereby adopts it as such.

on May 24, 2016.[3] Neil Benson d/b/a Pearl River Eco Tours filed a "Complaint for Exoneration from or Limitation of Liability" on June 17, 2016.[4] On August 29, 2016, the Court consolidated the actions.[5]

On June 15, 2017, the Court issued a scheduling order, which set a deadline of November 9, 2017, for parties to "file in the record and serve upon their opponents a list of all witnesses who will be called to testify at trial and all exhibits which will be used at trial . . . ."[6] On December 5, 2017, well after the November 9, 2017, deadline, Plaintiffs Leticia Keiger, Ricardo Perez ("Perez"), and Ignacio Perez (collectively, "Plaintiffs") filed a "Supplemental Witness and Exhibit List of Claimant/Plaintiffs."[7] On December 14, 2017, Plaintiffs also filed "Second Supplemental Witness and Exhibit List."[8]

On December 22, 2017, the Court granted Defendants' "Motion to Strike Supplemental Witness and Exhibit List" and "Motion to Strike Second Supplemental Witness and Exhibit List," finding that Plaintiffs had not established good cause to modify the scheduling order to allow Plaintiffs to introduce the witness and exhibits identified in the supplemental witness and exhibit lists.[9] In the Order, the Court noted that on November 30, 2017, after the deadline for filing of witness and exhibit lists, Perez sought treatment from a new medical provider, a psychiatrist named

---

[3] Rec. Doc. 1.

[4] Civil Action No. 16-10728, Rec. Doc. 1.

[5] Rec. Doc. 16.

[6] *Id.*

[7] Rec. Doc. 144.

[8] Rec. Doc. 152.

[9] Rec. Doc. 158.

Dr. Rafael Gurrerro.[10] Plaintiffs' counsel was not made aware of the appointment and the resulting scans until December 5, 2017.[11] Perez then failed to contact his counsel until December 13, 2017, despite multiple attempts by counsel to reach him, further delaying the disclosure of Dr. Rafael Gurrerro's medical records to Defendants.[12] Furthermore, the Court noted that Perez informed his counsel that he "did not want such an evaluation when this was discussed at the end of the first week of November."[13] Considering these facts and the factors set forth by the Fifth Circuit, the Court concluded that good cause did not exist to modify the scheduling order to allow Plaintiffs to introduce the testimony of Dr. Gurrerro and the medical records related to his treatment of Perez.[14]

On December 22, 2017, Plaintiffs reached a settlement with Defendants.[15] After notice from counsel, the Court dismissed the action, but retained jurisdiction to enforce the compromise agreed upon by the parties.[16]

On May 29, 2018, Defendants filed the instant motion.[17] Plaintiff Ricardo Perez ("Perez") filed an opposition on June 5, 2018.[18] On September 12, 2018, the Court issued an order setting the instant evidentiary hearing on this matter.[19] In its order, the Court noted that Plaintiff's

---

[10] *Id.* at 4.

[11] *Id.*

[12] *Id.* at 5.

[13] *Id.* at 7.

[14] Rec. Doc. 158.

[15] Rec. Doc. 160.

[16] *Id.*

[17] Rec. Doc. 161.

[18] Rec. Docs. 163.

[19] Rec. Doc. 164.

opposition to enforcement of the settlement is based on whether he suffered a "traumatic brain injury" prior to entering the agreement.[20] Therefore, the Court found that an evidentiary hearing was necessary because opposition to enforcement of the settlement was potentially based not on the merits of the claim, but on a challenge to the validity of the agreement itself.[21]

On January 16, 2016, the Court held an evidentiary hearing to address the issue of Perez's capacity to enter into the settlement agreement.[22] At the hearing, all parties and witnesses stipulated that Perez was competent to enter the settlement agreement and presented medical evidence to support this stipulation.[23]

## II. Parties' Arguments

### A. *Defendants' Arguments in Support of its Motion to Enforce the Settlement*

In the instant motion, Defendants seek an order to enforce the settlement agreement with Perez.[24] According to Defendants, Perez agreed to release all claims against all parties in exchange for $100,000.[25] Defendants assert that Perez consented to the settlement in an email with his counsel, a Receipt and Release was drafted, and settlement funds were sent to Perez's counsel.[26] However, Defendants contend that Perez did not execute the Receipt and Release.[27]

Defendants assert that there is no evidence or allegation of fraud or mutual mistake in this

---

[20] *Id.* at 7.

[21] *Id.*

[22] Rec. Doc. 169.

[23] Rec. Doc. 180.

[24] Rec. Doc. 161-1 at 1.

[25] *Id.* at 2.

[26] *Id.*

[27] *Id.*

case, which Defendants argue are the only two bases for upsetting a settlement under the general maritime law.[28] Rather, Defendants contend that Perez simply refuses to execute the Receipt and Release after previously consenting to the settlement in writing.[29] Accordingly, Defendants seek to enforce the settlement previously agreed to with Perez under the terms and conditions set forth in the agreed Receipt and Release.[30]

### B.  *Perez's Arguments in Opposition to the Motion to Enforce the Settlement*

In response, Perez's counsel states that Perez consented to the settlement verbally during a telephone call and in writing via a text message to counsel.[31] According to Perez's counsel, Perez has refused to sign the Receipt and Release because he believes that he sustained a traumatic brain injury from the accident in question based on "1) his psychiatrist, Dr. Guerro's opinion of November 30, 2017 (rendered after the witness list cut off) that he had a traumatic brain injury, and 2) the results of his QEEG test on December 13, 2017 (rendered also after the witness cutoff date) which states that "the right frontal localized slower alpha suggests a local disturbance which is consistent with post-traumatic ischemic changes seen in mild traumatic brain injuries."[32] According to counsel, Perez granted authority to settle his case after these tests were done because the Court had ruled that these witnesses and documents could not be presented at trial.[33] However,

---

[28] *Id.* at 4.

[29] *Id.*

[30] *Id.* at 5.

[31] Rec. Doc. 163 at 1.

[32] *Id.* at 1–2.

[33] *Id.* at 2.

Perez later advised counsel that he will not sign the release "because he has traumatic brain injury from the accident."[34]

### III. Legal Standard

"[A] district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties."[35] The Fifth Circuit reviews the district court's exercise of this inherent power for abuse of discretion.[36] "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts."[37] "Under federal law, 'one who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity.'"[38] The Fifth Circuit has identified two bases under which a settlement agreement may be held invalid: fraud or mistake.[39] "Although a district court has inherent authority to enforce an agreement to settle a case pending before it *summarily*, when opposition to enforcement of the settlement is based not on the merits of the claim but on a challenge to the validity of the agreement itself, the parties must be allowed an evidentiary hearing on disputed issues of the validity and scope of the agreement."[40]

### IV. Findings of Fact and Conclusions of Law

Here, there are no facts in dispute. All parties agree that a settlement agreement was reached for the total sum of $100,000, in exchange for Perez releasing Defendants from all claims

---

[34] *Id.*

[35] *Bell v. Schexnayder,* 36 F.3d 447, 449 (5th Cir. 1994).

[36] *See id.* at 450

[37] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (en banc) (internal quotation marks omitted).

[38] *Del Bosque v. AT & T Advertising, L.P.*, 441 F. App'x 258, 261 (5th Cir. 2011) (citing *Mid-South Towing Co.*, 733 F.2d at 392).

[39] *Mid–South Towing Co. v. Har–Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984).

[40] *Id.* at 390.

against them. Further, during the evidentiary hearing on this matter, all parties stipulated that Perez was competent to enter the settlement agreement at the time he agreed to the terms of the settlement. Both parties submitted the corresponding testimony of medical experts into the record, testifying that Perez was competent to enter the settlement and was able to make informed and independent decisions when he agreed to the settlement.[41] Perez does not argue that he entered the settlement due to fraud or mistake. Instead, Perez argues that he did not sign the Receipt and Release because he desired additional compensation on the basis that he suffered a traumatic brain injury.[42]

The Court does not find any evidence of fraud or mistake in this case and does not find evidence that Perez lacked competency to enter the settlement agreement. In fact, the expert testimony submitted by both parties supports a determination that Perez was competent when he agreed to the terms of the settlement.[43] Therefore, the Court will hold Perez to his agreement and enforce the settlement agreement.

**IT IS HEREBY ORDERED** that the "Motion to Enforce Settlement Agreement with Ricardo Perez"[44] is **GRANTED.**

**NEW ORLEANS, LOUISIANA**, this __1st__ day of February, 2019.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[41] Rec. Doc. 180.

[42] Rec. Doc. 163 at 2.

[43] Rec. Doc. 180.

[44] Rec. Doc. 161.